# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                                           SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| RPB S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HANYING "ANGELA" ZHANG, | ) Civil Action No. 20- |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| BANK OF AMERICA, N.A., | ) |
| | ) |
| Trustee/Nominal | ) |
| defendant. | ) |
| | ) |

**COMPLAINT**

Plaintiff RPB S.A. ("RPB") hereby sues defendant Hanying "Angela" Zhang ("Zhang")

and nominal trustee defendant Bank of America, N.A., and alleges as follows:

1.      Plaintiff RPB S.A. is an Argentinian beverage producer that fell victim to a

massive fraud that resulted in a transfer of approximately USD $6.8 million of Plaintiff's funds

to a bank account in Hong Kong. Following the initial transfers, the fraudsters have transferred

and dissipated nearly all of the stolen funds to various transferees across the world, including in

the United States, Australia, Gibraltar, Hong Kong, China, India, Japan, Korea, the Philippines,

Singapore, Taiwan, Tanzania and elsewhere.

2.      As a result of prompt investigative efforts and resulting litigations brought in

Hong Kong and California, Plaintiff has been able to trace and freeze up a significant portion of

the stolen funds, including through provisional orders issued in Hong Kong and temporary restraining orders issued in California.

3.      Plaintiff has traced one of the fraudulent transfers of its funds, in an amount of USD $250,000.73, to Defendant Zhang's Bank of America accounts in Massachusetts, which funds Plaintiff now seeks to recover through this action.

4.      Nominal defendant Bank of America is named herein solely as the bank where Zhang maintains Massachusetts bank accounts where she received a portion of the funds belonging to RPB S.A. Bank of America is named herein solely in connection with the trustee attachment and injunction that Plaintiff seek to prevent further transfer or distribution of the stolen funds. Plaintiff does not seek any other relief or damages with respect to Bank of America.

## PARTIES

5.      Plaintiff RPB S.A., is a company incorporated under the laws of Argentina.

6.      Defendant Hanying "Angela" Zhang is an individual who, upon information and belief, resides at 3 Vincent Avenue, Belmont, MA 02478.

7.      Nominal defendant Bank of America, N.A. is a national bank headquartered in Charlotte, South Carolina, where Zhang maintains bank and credit accounts, including a checking account ending in number 5345, and a savings account ending in account number 5358. Bank of America is registered to do business in Massachusetts and maintains numerous Massachusetts offices, including at 100 Federal St, Boston, MA 02110.

## JURISDICTION AND VENUE

8.      Jurisdiction is properly conferred by G.L. c. 212, § 4 and c. 223A, §§ 2 and 3.

9.      Venue is proper in this County under G.L. c. 223, § 1.

## FACTUAL ALLEGATIONS

*The Fraud*

10.     Plaintiff RPB S.A. is an Argentina company that specializes in the production and distribution of wines, juices, fruit-based drinks, water and dairy products.[1]

11.     In December 2019, Plaintiff became a victim of a high value fraud, where an individual impersonating and identifying themselves as Plaintiff's President convinced Diane Veronesi, an executive employee of the Plaintiff, to transfer multiple payments in the total sum of USD $6,823,232 ("Stolen Funds") from Plaintiff's bank account with Banco Santander Rio in Argentina to an account at Standard Chartered Bank in Hong Kong ("SC Bank"), held by an entity called Hong Kong HRJ Trade Limited ("HRJ"). The transfers were made as follows:

|    | Date of Payment to HRJ | Amount of Payment |
|----|------------------------|-------------------|
| 1. | December 9, 2019       | $487,081          |
| 2. | December 9, 2019       | $495,670          |
| 3. | December 11, 2019      | $988,756          |
| 4. | December 12, 2019      | $969,763          |
| 5. | December 13, 2019      | $916,807          |
| 6. | December 16, 2019      | $988,636          |
| 7. | December 17, 2019      | $990,655          |
| 8. | December 18, 2019      | $985,864          |
|    | **Total:**             | **$6,823,232**    |

12.     Further transfers were attempted, but rejected by Banco Santander Rio.

13.     On January 2, 2020, Banco Santander Rio contacted Plaintiff, through its President, to advise of the rejected transfers, which prompted Plaintiff to discover the large sum of money that had been fraudulently transferred to HRJ in Hong Kong.

14.     Upon discovering the fraudulent transfers, Plaintiff undertook an investigation of the fraud and the tracing of the proceeds, seeking recovery of the Stolen Funds.

---

[1] *See* http://www.baggio.com.ar.

15.     On January 2, 2020, Veronesi filed a police report in Argentina regarding the fraud, in which Veronesi reported that on December 4, 2019, an unknown person falsely identifying himself as Adrian Clamp from KPMG contacted Plaintiff to obtain the email addresses of Veronesi and Ricardo Stefani from Plaintiff's finance department.

16.     On the same day, the fraudster emailed Veronesi and explained that she would be contacted by an Adrian Clamp to assist in providing finance for an acquisition of an Asian-based company on behalf of Plaintiff. The fraudster further informed Veronesi that the deal was confidential and therefore she should not disclose it to anyone. Veronesi began an exchange of emails with the fraudster and fraudster Clamp culminating in them directing her to make multiple payments to the account in Hong Kong, which Veronesi made on the dates and in the amounts a stated above.

17.     These transfers were made to an entity known as HRJ, based on fraudulent invoices from HRJ that were provided to Veronesi by the fraudsters.

18.     A corporate registry search of HRJ by Plaintiff's Hong Kong attorneys reveals that HRJ was incorporated in Hong Kong on or about April 24, 2019 with a single shareholder and director, Chen Zhijie, a Chinese national.

19.     Neither the Plaintiff nor any of its employees have heard of, transacted business with, or have had any dealings with HRJ or Chen Zhijie.

***Hong Kong Litigation Reveals Presence of a Portion of the Stolen Funds in the United States***

20.     On January 14, 2020, Plaintiff obtained an *ex parte* injunction order in Hong Kong, enjoining the transfer of the Stolen Funds and requiring full disclosure of assets by HRJ and SC Bank, which enabled Plaintiff to identify at least 19 fraudulent transfer recipients of the Stolen Funds from HRJ.

21.     On February 12, 2020, Plaintiff obtained a second *ex parte* injunction order requiring full disclosure by the additional Hong Kong defendants, which enabled Plaintiff to identify an additional 17 fraudulent transfer recipients of the Stolen Funds.

22.     As a result of these and other injunction orders obtained in Hong Kong, Plaintiff has traced $6,818,041 of the Stolen Funds to a bank account in Hong Kong. Overall, $3,515,843.33 of the Stolen Funds were transferred to Hong Kong, remained in Hong Kong accounts, and are now enjoined by the Hong Kong courts. Plaintiff has further traced $3,454,923.59 from accounts in Hong Kong containing the Stolen Funds that have been transferred to bank accounts outside of Hong Kong, including the transfer at issue in this lawsuit.

23.     Overall, all but approximately $6,400 of the approximately $6.82 million of Stolen Funds have been transferred and dissipated to over 30 transferees in the course of less than 30 days after the initial transfers, including to transferees located in the United States, Australia, Gibraltar, Hong Kong, China, India, Japan, Korea, the Philippines, Singapore, Taiwan, Tanzania and elsewhere.

24.     Expedited discovery in the Hong Kong and California actions has revealed that the circumstances of the transfers demonstrate the fraudulent intent of the perpetrators. For example, upon each deposit of the Stolen Funds to the account of HRJ, HRJ immediately (within the same day) transferred nearly all of the deposited sums to third party accounts.

25.     One such transferee of a significant portion of the Stolen Funds from HRJ in Hong Kong is an entity known as Jingting Textile Trading Limited ("Jingting"). Upon information and belief, Jingting is a Hong Kong entity that appears to have a sole beneficial owner that holds itself out as a "jean wholesaler."

26.     Jingting has received approximately $1,857,000 of the Stolen Funds from HRJ in Jingting's bank account held at Standard Chartered Bank (Hong Kong) Limited ("SC Bank").

27.     The transfer from HRJ to Jingting was made with actual intent to hinder, delay, and/or defraud the Plaintiff in its efforts to recover the Stolen Funds.

28.     Upon information and belief, Jingting did not provide a reasonably equivalent value to HRJ in exchange for receiving the transfer of the portion of Stolen Funds and the transferor of the funds intended to incur and did incur debts beyond its ability to pay, including the repayment of the Stolen Funds to the Plaintiff.

29.     Upon information and belief, Jingting did not accept the transfer from HRJ in good-faith and/or for a reasonably equivalent value.

30.     Jingting has been sued in the Hong Kong actions, but has not lodged an appearance.

31.     Notwithstanding Jingting's failure to appear, Plaintiff has obtained an injunction and expedited discovery in the Hong Kong action with respect to Jingting's SC Bank account.

32.     Within days of receiving the transfers from HRJ, Jingting and other initial transferees made subsequent transfers, including the transfer to Zhang at issue in this case.

33.     In particular, between December 9, 2019 and December 18, 2019, numerous transfers of portion of the Stolen Funds were made from Jingting's bank account in Hong Kong to various transferees, including a transfer of $250,000.73 of the Stolen Funds to Zhang's Bank of America account in Massachusetts on or about December 16, 2019.

34.     The transfer from Jingting to Zhang was made with actual intent to hinder, delay, and/or defraud the Plaintiff in its efforts to recover the Stolen Funds.

35.    Upon information and belief, Zhang and/or her affiliates did not provide a reasonably equivalent value to Jingting in exchange for receiving the transfer of the portion of Stolen Funds and the transferor of the funds intended to incur and did incur debts beyond its ability to pay, including the repayment of the Stolen Funds to the Plaintiff.

36.    Upon information and belief, Zhang did not accept the transfer from Jingting in good-faith and/or for a reasonably equivalent value.

37.    The suspicious nature of these subsequent transfers further supports the fraudulent intent behind the transfers. For example, Jingting, a purported jean wholesaler, inexplicably made one large transfer (approximately $399,643) to USA Dacheng Group Co., LTD, an entity in an entirely different line of business of "poultry production & support," according to records on file with the California Secretary of State.

38.    Similarly, Plaintiff has not discerned any legitimate connection between the defendant Zhang and Jingting.

### The California Action

39.    On or about May 5, 2020, Plaintiff brought an action in the United States District Court for the Central District of California, Civil Action No. 20-cv-04105-JAK-SK (the "California Action"), against multiple known and unknown defendants, including Zhang, seeking to set aside voidable transfers of the Stolen Funds in the United States, to recover those funds as damages, and for a constructive trust.

40.    On May 6, 2020, Plaintiff filed an *ex parte* application for expedited discovery as to the bank defendants in the California Action, which the California court granted.

41.    On June 1, 2020, Plaintiff filed an Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO Application"),

seeking, in relevant part, an injunction to freeze funds received by several of the transferee defendants, including the funds received by Zhang in her Bank of America bank account.

42.    On June 2, 2020, after a hearing, the court in the California Action issued an Order, in relevant part granting the TRO Application, including with respect to Zhang, whom the parties believed to be a California resident. In particular, the California court found that bank records provided by Plaintiff "support the view that Zhang received a transfer of $249,975.14 at their Bank of America account ending in #5345, from Jingting."

43.    In addition, in granting the provisional relief, the California court found that

the evidence presented in support of the Second TRO Application, which includes the order issued by the Hong Kong Court, is sufficient to show a reasonable likelihood of success on the merits, as well as "serious questions" going to the merits pursuant to *Cottrell*. Plaintiff has submitted substantial evidence, through a declaration by its CEO, that it was the victim of a substantial fraud perpetrated by the Baggio Impersonator and Clamp. This evidence supports an inference that the unknown conspirators who defrauded the Plaintiff intentionally transferred the Funds several times to disperse them and make them difficult to trace. This evidence was sufficient for the Hong Kong Court to issue three successive injunctive orders. It provides strong support for the claims that: the Funds transferred to the ten Transferee Defendants sought to be enjoined through the Second TRO Application, are traceable to Secondary Transferees Jingting, Dhuai and Xinwangyi;

\* \* \*

Plaintiff has submitted substantial evidence that the Funds at issue have been transferred among dozens of transferees in multi-layered transactions. There is a risk that -- absent immediate, ex parte injunctive relief -- this will recur and make the funds untraceable and unrecoverable.

44.    In addition, the California court found that it was appropriate to waive any security or bond requirements in connection with the TRO Application and the resulting Order.

45.    On June 15, 2020, the California court conducted a further hearing and, in relevant part, extended the June 2, 2020 TRO Order and amended the TRO Order "to apply to the account ending in x5345 associated with 'Hanying Zhang' that is held by Bank of America,

-8-

N.A. (see Dkt. 79 ¶¶ 2-3), as well as the other account associated with 'Hanying Zhang' identified by Bank of America, N.A."

46.    As of the date of filing of this lawsuit, Zhang has not formally appeared in the California Action. Instead, Zhang's North Carolina counsel has contacted Plaintiff's counsel and provided a document purporting to be a Declaration of Hanying Zhang, dated June 19, 2020.

47.    In her purported declaration, Zhang confirmed her ownership of the Bank of America accounts at issue, stated that she resides in Massachusetts and has no connection to California, and stated that the funds at issue were purportedly sent to her from China, through a "broker," by her supposed husband Feng Jin, a Chinese citizen living and working in China.[2]

48.    In follow up discussions between Zhang's counsel and Plaintiff's counsel, Zhang's counsel stated, in substance, that it would be difficult or unrealistic to obtain a declaration from the "broker," from Feng Jin or from Jingpin.

49.    Zhang did not, however, provide any explanation for how a portion of the Stolen Funds came into her or her husband's possession and did not claim that either she or her husband provided any value in exchange for those funds. In other words, Zhang's purported declaration has raised more questions than it has answered.

50.    On June 29, 2020, the court in the California Action conducted a further hearing and further extended the June 2 TRO Order, including as to Zhang.

**COUNT ONE**
(To Set Aside Fraudulent Transfer Pursuant to G.L. c. 109A)

51.    Plaintiff restates and incorporates by reference all prior allegations.

---

[2] Upon information and belief, as a result of certain restrictions under Chinese laws on financial transfers to the United States, individuals resort to the use of illegal intermediaries or "brokers" to circumvent the law in order to effect such transactions.

52.     As of December 4, 2019, Plaintiff was the holder of an account at Banco Santander Rio, the rightful owner of all funds maintained on deposit therein, in excess of USD $6,823,232 which would become the Stolen Funds.

53.     By reason of the above-described fraud, HRJ came into possession and control of the Stolen Funds.

54.     Between December 5, 2019 and December 18, 2019, HRJ transferred a portion of the Stolen Funds to accounts held and controlled by, among others, Jingting Textile Trading Limited.

55.     Upon information and belief, HRJ made the transfer to Jingting with an actual intent to hinder, delay, or defraud the Plaintiff. Upon information and belief, Jingting did not provide reasonable value or fair consideration in exchange for the transferred funds.

56.     Upon information and belief, Jingting did not accept the transfer from HRJ in good-faith and/or for a reasonably equivalent value.

57.     On or about December 16, 2019, Jingting Textile Trading Limited transferred the sum of approximately $250,000.73 into the Bank of America accounts held and controlled by Zhang in Massachusetts.

58.     Upon information and belief, Jingting made the transfer to Zhang with an actual intent to hinder, delay, or defraud the Plaintiff. Upon information and belief, Zhang did not provide reasonable value or fair consideration in exchange for the transferred funds.

59.     Upon information and belief, Zhang did not accept the transfer from Jingting in good-faith and/or for a reasonably equivalent value.

60.     Plaintiff now holds a claim for recovery of the Stolen Funds, against HRJ and any subsequent direct and indirect transferees, including Jingting and Zhang. Actions are now pending in Hong Kong and California against HRJ, Jingting and other defendants.

61.     Plaintiff is informed and believes that the above transfers from HRJ to Jingting Textile Trading Limited, and from Jingting Textile Trading Limited to Zhang, were made with an actual intent to hinder, delay or defraud Plaintiff in the collection of Plaintiff's claims for recovery of the Stolen Funds, and without receiving a reasonably equivalent value in exchange for the transfer or obligation.

62.     Plaintiff is further informed and believes that Zhang and/or her affiliates received the portion of the Stolen Funds in Massachusetts with knowledge that the HRJ and/or Jingting Textile Trading Limited intended to hinder, delay or defraud Plaintiff in the collection of Plaintiff's claims for recovery of the Stolen Funds, and without receiving a reasonably equivalent value in exchange for the transfer or obligation.

63.     As a proximate result of the conduct of HRJ, Jingting Textile Trading Limited, and Zhang and/or her affiliates, Plaintiff has been harmed and is entitled to the remedies set forth in G.L. c. 109A, § 8, including an avoidance of the transaction and provisional remedies, including an attachment by trustee process and injunctive relief.

64.     As a proximate result of the conduct of HRJ, Jingting Textile Trading Limited, and Zhang and/or her affiliates, equity requires that a constructive trust for the Plaintiff's benefit be placed over the funds held Zhang in her Bank of America accounts at issue.

## PRAYER FOR RELIEF

WHEREFORE, RPB S.A. respectfully requests that the Court grant the following relief:

(i)     Enter judgment in favor of RPB S.A. and against defendant Zhang on all counts;

(ii)   Impose a constructive trust for Plaintiff's benefit in an amount of $250,000.73 over the

checking account ending in number 5345, and/or a savings account ending in number

5358 held and controlled by Zhang with the nominal defendant Bank of America;

(iii)   award damages to Plaintiff in an amount to be established at trial, no less than

$250,000.73, plus pre- and post-judgment interest; and

(iv)   award Plaintiff such other relief as is equitable, just and reasonable under the

circumstances.

**Plaintiff Demands a Jury Trial on All Issues So Triable**

Respectfully submitted,

RPB S.A.,
By its attorneys,

_____
Phillip Rakhunov (BBO#663746)
Peter J. Duffy (BBO #566682)
POLLACK SOLOMON DUFFY LLP
101 Huntington Avenue, Suite 530
Boston MA 02199
(617) 439-9800
pduffy@psdfirm.com
prakhunov@psdfirm.com